UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT L. DYKES #201541,                    Case No.  2:21-cv-00113

                      Plaintiff,                    Hon.  Hala Y. Jarbou
                                                    Chief U.S. District Judge
        v.

UNKNOWN ORSBOURNE, et al.,

                      Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment due to Plaintiff's failure to exhaust his administrative remedies. (ECF No. 19.)

Plaintiff State Prisoner Robert L. Dykes filed an unverified complaint, pursuant to 42 U.S.C. § 1983, on May 28, 2021.  (ECF No. 1.)  Dykes's complaint identifies two Defendants: Corrections Officer (CO) Orsborne (Plaintiff spells Defendant's name as Orsbourne) and Classification Director Bestman (alternatively spelled Besteman), both of whom worked at the Kinross Correctional Facility (KCF).  (*Id*., PageID.3.)  Dykes sues both Defendants in their official and personal capacities.  (*Id*.)

In general, Dykes alleges that he filed grievances against Orsborne, and, as a result, she retaliated against him, violated his equal protection rights and sexually

harassed him.  (*Id.*)  More specifically, Dykes says that Orsborne accused him of having sex with his "bunky" in retaliation for the grievance that he wrote against her.  (*Id.*, PageID.5.)  Dykes says that CO Orsborne sexually harassed him when she conducted a pat-down search while Dykes was using the urinal in the restroom. (*Id.*, PageID.6.)  Dykes says that he filed a complaint with Internal Affairs regarding this incident.  (*Id.*)  Dykes also alleges that Orsborne prevented him from obtaining a porter job or law library job.  (*Id.*, PageID.5-6.)

Dykes alleges that CO Orsborne is good friends with Defendant Classification Director Bestman.  (*Id.*, PageID.3.)  And Dykes says that Bestman assisted Orsborne in retaliating against him.  (*Id.*, PageID.6.)

Dykes's unverified complaint touches on the subject of exhaustion.  (*Id.*, PageID.3-4.)  Dykes acknowledges that he was placed on modified access to the grievance process and that the KCF grievance coordinator denied his request to file a grievance against Defendant Bestman.  (*Id.*)  But he says that he was "deterred" from filing a grievance against CO Orsborne and, as a result, that he instead filed a complaint with the Ombudsman's office and the Internal Affairs Department.  (*Id.*)

Defendants filed a motion for summary judgment arguing that Dykes failed to exhaust his administrative remedies because he never filed grievances against them on the issues raised in this complaint.  (ECF Nos. 19, 20.)  Defendants included a listing of the nine grievances that Dykes filed during the relevant period. (ECF No. 20, PageID.70-71.)  Defendants noted that none of these grievances addressed the conduct at issue in this case and only one of the grievances even

named a Defendant. (*Id.*, PageID.78.) Defendants also anticipated a thwarting argument by Dykes, noting that Dykes did file other grievances during the period at issue here. (*Id.*, PageID.79.)

In response, Dykes challenged the MDOC's handling of the grievances he did file. He also added (in a declaration, *see* ECF No. 24-1, PageID.185) that he was afraid to write any more grievances against Orsborne due to the harassment he was receiving. He noted that he instead filed complaints with the Ombudsman's office and Internal Affairs as well as filing various kits. (*Id.*)

In reply, Defendants argue Dykes's grievance record indicates that he is not too intimidated to file grievances. (ECF No. 27.)

Here, the grievance records provided by Defendants demonstrates that Dykes did not exhaust the claim in this case through the 3-step grievance process. Thus, the central issue is whether Dykes was intimidated out of pursuing grievances in this case. The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court deny Defendants' motion for summary judgment.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden

---

[1]    If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to

provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at

¶ Q.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ Q, W.  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ Y.  The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  *Id.* at ¶ DD.  The respondent at Step II is designated by the policy.  *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.

7

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified if an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because

[the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325.  We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

## IV. Analysis

The parties devote considerable effort to argument regarding the grievances that Dykes actually filed.  Dykes argues that many of the rejections and denials

---

[2]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

were incorrect or improper.  (ECF No. 24, PageID,174-77.)  Dykes does not, however, argue that he exhausted the claims in this case through the grievance process.  Instead, he notes that he stopped filing grievances after the November 2020 retaliatory sexual harassment.  (*Id.*, PageID.175.)  Thus, the parties agree that Dykes did not exhaust the claims in this case.  The only real issue is whether he was required to do so given his claim that he was thwarted and intimidated.

As noted above, the grievance process is unavailable, thus a plaintiff need not exhaust a claim, "where prison administrators thwart [the plaintiff] from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. at 644.

In his unverified complaint, Dykes claimed that he was prevented from filing grievances.  (*See* ECF No. 1, PageID.3 (claiming that Dykes Plaintiff "was deterred from filing a retaliatory grievance on Orsbourne").)   In their motion for summary judgment, Defendants anticipated a thwarting argument by Dykes, noting that Dykes did file other grievances during the period at issue here, which establishes that the grievance process was available and accessible.  (ECF No. 20, PageID.79.)

Dykes's response to Defendants' motion includes a sworn declaration explaining why he felt thwarted:

> 6. Because of Defendant Orsbourne's continued harassment, and false
> sexual claims, I was affraid to write a grievance against her, as
> she has also made it clear to me that she did not care who I tell,
> because she is good friends with the classification director, and
> the administration at KCF. I felt that she could get even more
> creative in her fabrication, I never wrote another grievance against
> Orsbourne while housed at the Kinross correctional Facility (KCF).

(ECF No. 24-1, PageID.185.)

"[A] prisoner's sworn affidavit, standing alone, may create a genuine dispute of material fact that forecloses summary judgment on exhaustion even if the record lacks corroborating evidence." *Lamb v. Kendrick*, 2020 WL 14713620, \*7 (6th Cir. Oct. 26, 2022). However, even where the evidence shows that the administrative process was unavailable, the PLRA requires an inmate to make affirmative efforts to comply with the requirements before the Court analyzes "whether those efforts to exhaust were sufficient under the circumstances." *Id.*, at \*4. In addition, as Defendants correctly note, a prisoner's grievance record is relevant to determine if a prisoner was thwarted from pursuing administrative remedies. (ECF No. 27, PageID.252 (citing *Sango v. Eubanks*, No. 2:20-cv-00160, 2021 WL 2942490, at \*4 (W.D. Mich. May 3, 2021), *R&R adopted,* 2021 WL 2217372 (W.D. Mich. June 2, 2021)).)

The thwarting issue in this case is a close call. Here, Dykes claims that he did make some effort to exhaust his administrative remedies by complaining to the Ombudsman's office and MDOC Internal Affairs. (ECF No. 24-1, PageID.185.) In addition, Dykes asserts that his claim that he stopped filing grievances after the

11

November 2020 sexual harassment incident is supported by the grievance records. (*See* ECF No. 24 (Dykes's response (citing ECF No. 20, PageID.70-71).)  The latter contention is not completely correct.  The Defendants' Step III Grievance report shows that Dykes filed a grievance on November 17, 2020, then stopped for a period of time, then resumed filing on May 7, 2021.  (ECF No. 20-3, PageID.95-96.) Whether his efforts were enough is not clear at this stage of the proceedings.  The fact that a prisoner filed grievances on other claims during the period is certainly relevant.  But the filing of other grievances does not conclusively establish that Dykes was *not* thwarted from filing a particular grievance during the same period. *Surles v. Anderson*, 678 3d 452, 457-458 (6th Cir. 2012).  As noted above, Dykes says in his declaration that he filed a complaint with Internal Affairs and the Ombudsman's Office asserting continued sexual harassment against CO Orsborne, which arguably shows that he could have also filed a grievance.  But these acts could also be interpreted to show that Dykes was too intimidated to use the MDOC grievance system.  It should also be noted that Defendants have failed to address whether Dykes's complaint to Internal Affairs could have exhausted any of his claims against CO Orsborne.

Ultimately, it is the undersigned's opinion that Dykes's sworn declaration raises an issue of material fact regarding whether CO Orsborne's conduct thwarted him from filing a grievance naming her.

The undersigned will address one other point regarding Dykes's exhaustion claims.  In his sworn declaration, Dykes states that he sent a series of kites to the

KCF Grievance Coordinator requesting grievance forms. (ECF No. 24-1, PageID.186.) At that time, Dykes was on modified access to the grievance system. (*Id.*) Dykes explains that his request for a grievance form to file a grievance against Defendant Bestman was denied by the Grievance Coordinator. (*Id.*)

KCF Grievance Coordinator Gustafson attests that all requests for grievance forms are logged, and that Dykes only made one request for grievance forms while he was on modified access to the grievance process. (ECF No. 20-4, PageID.155.) Defendants attached Dykes' request to their motion:

```
TO: GRIEVANCE COORDINATOR
FR: Dykes-Bay #201541
LK: E-1-29
Date: 1/22/2021
RE: Permission to file grievances.


    I sent you a kite requesting to file a
grievance against the librarian for the denial
of carbon paper, I never heard anything from you.
While I still want to file that grievance, I also
want to file a grievance for the denial of vitimin
C, I have not been able to purchase any from the
store for the past five months, and healthcare
will not provide any, this vitimin is essential
during this pandemic. The third grievance I
want to file is against the classification
director who is retaliating against me .

                               Respectfully,

I, Robert L. Dykes-Bay, declare
under the penalty of perjury 28
U.S.C. 1746, that I mailed this
kite on 1/22/2021


C.C. Filed
```

(ECF No. 20-4, PageID.160.) Grievance Coordinator Gustafson responded in part by writing "[t]he grievance against Classification is also being denied as vague as

you have given no indication on how he has retaliated against you." (*Id.*, PageID.161).

Dykes's request or requests during January 2021 does not change the undersigned's conclusion. There are many ways to interpret Dykes's request.[3]  And here, Defendants are the moving party on an affirmative defense created by the PLRA.  As noted, Defendants have the burden of proving they are entitled to judgment in their favor under Rule 56.  "When [as here] a prisoner makes affirmative efforts to comply but does not succeed, we analyze whether those efforts to exhaust were sufficient under the circumstances."  *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (internal quote marks and citations omitted).  The record before the Court is anything but clear, at least with respect to Dykes's efforts to exhaust via either the MDOC grievance system or via a complaint to Internal Affairs or to the Ombudsman's Office.  Perhaps Dykes did not do enough to attempt to exhaust his claims.  That issue, however, is more appropriately addressed in a bench trial on exhaustion after relevant discovery and a more substantial factual record is developed.

## V. Recommendation

It is respectfully recommended that the Court deny Defendants' motion for summary judgment because genuine issues of material fact exist regarding whether

---

[3]    Defendants cite *Glenn v. Lamp*, No. 1:19-cv-803, 2021 WL 3287763 (W.D. Mich. Aug. 2, 2021) for the proposition that filing a kite (a written request) to the Classification Director did not exhaust administrative remedies.  In that case, however, Plaintiff Glenn, unlike Dykes, was not on modified access to the grievance process, and he could have directly filed a grievance without requesting a grievance form from the Grievance Coordinator.

Dykes was excused from exhausting his claims against Defendants due to thwarting or intimidation.[4]


Dated:   November 1, 2022                    /s/ *Maarten Vermaat*
                                             MAARTEN VERMAAT
                                             U. S. MAGISTRATE JUDGE


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

---

[4]     If the Court accepts this recommendation, Defendants may move for a bench trial on this issue.

15