UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT L. DYKES #201541,                       Case No. 2:21-cv-00113

        Plaintiff,                              Hon. Hala Y. Jarbou
                                               Chief U.S. District Judge

    v.

UNKNOWN ORSBOURNE, et al.,

        Defendants.
_____/

## **REPORT AND RECOMMENDATION**

### I.  **Introduction**

This Report and Recommendation (R&R) addresses the summary judgment motion filed by Defendants.  (ECF No. 40.)

Plaintiff – state prisoner Robert L. Dykes-Bey – filed an unverified complaint, pursuant to 42 U.S.C. § 1983, on May 28, 2021.  (ECF No. 1.)  Dykes-Bey's complaint identifies two Defendants: Corrections Officer (CO) Orsborne (Plaintiff spells Defendant's name as Orsbourne) and Classification Director Besteman (Plaintiff spells Defendant's name as Bestman), both of whom worked at the Kinross Correctional Facility (KCF).  (*Id.*, PageID.3.)  Dykes-Bey sues both Defendants in their official and personal capacities.  (*Id.*)

It is respectfully recommended that the Court grant Defendants' motion for summary judgment because no genuine issues of material fact exist with respect to Dykes-Bey's First Amendment retaliation and Fourteenth Amendment class-of-one

Equal Protection claims against Defendants. If the Court accepts this recommendation, this case will be dismissed.

## II. Factual Allegations

Dykes-Bey asserts that in September of 2020, he filed a grievance against CO Orsborne for denying him a refill of bleach to clean the toilet seat. Similarly, the next month, he filed a grievance against CO Osborne for the denial of toilet paper. (*Id.*, PageID.4-5.)

Dykes-Bey says that in October of 2020, he was helping another prisoner to understand a Step I grievance response that the prisoner had received. (ECF No. 1, PageID.4.) Dykes-Bey says that he wrote the Step I grievance on behalf of that prisoner against CO Orsborne. (*Id.*) Dykes-Bey says that CO Orsborne approached them and stated: "Dykes! I knew that was you calling yourself helping these guys around here write grievances, but you mark my word, I'll have you moved out of here." (*Id.*)

On November 26, 2020, Dykes-Bey asked if he could get a porter job, but CO Osborne said: "I told you once, and now I'm going to tell you again, you'll never get another porter job in this unit for them grievances you wrote on me." (*Id.*, PageID.5.)

A few hours later, CO Orsborne entered Plaintiff's prison cube and stated she knew what was going on between Dykes-Bey and his cellmate. (*Id.*) Dykes-Bey says that he was called to the Sergeant's office and falsely accused of having sex with his cellmate. (*Id.*) Dykes-Bey asserts that CO Orsborne made the accusation

to retaliate against him because he had filed grievances against her.  (*Id.*)  No misconduct ticket was written.  (*Id.*, PageID.6.)  Dykes-Bey says that he contacted Internal Affairs and the Ombudsman's Office.  (*Id.*)

On December 25, 2020, Dykes-Bey says that CO Orsborne entered the restroom, without an advance warning, while he was inside using the urinal.  (*Id.*)  CO Orsborne ordered him to step out for a pat down.  (*Id.*)  Dykes-Bey says he contacted Internal Affairs and the Ombudsman's Office.  (*Id.*)  Dykes-Bey says that CO Orsborne retaliated and discriminated against him by telling Classification Director Besteman to hire other prisoners for porter jobs.  (*Id.*)  On March 8, 2021, Dykes-Bey asked Classification Director Besteman why he was not hired for a porter or law library job and Besteman responded "you need to be careful of who you file grievances against."  (*Id.*)

### III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The court must consider all pleadings, depositions, affidavits,

and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV. Retaliation

Dykes-Bey asserts four retaliation claims against Defendants that allegedly occurred between October and December of 2020.  Dykes-Bey asserts that:

(1) in October of 2020, CO Orsborne threatened to move Plaintiff out of the housing unit because he was helping other prisoners with grievances,

(2) in October and November of 2020, CO Orsborne told Plaintiff that he will not get re-hired as a unit porter because of his grievances, and then Classification Director Besteman failed to re-hire him,

(3) on November 26, 2020, CO Orsborne accused Plaintiff of engaging in a sexual act with his cellmate, and

(4) on December 25, 2020, CO Orsborne entered the restroom unannounced while Plaintiff was using the urinal.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  To set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in

that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

## A. Protected Conduct

Dykes-Bey says that Defendants retaliated against him because he submitted two grievances: **KCF-20-09-815-27z** (submitted on September 19, 2020, concerning the denial of cleaning spray) (ECF No. 41-8, PageID.506) and **KCF 20-10-865-28e** (allegedly submitted in October of 2020, because Orsborne refused to provide toilet paper) (ECF No. 1, PageID.5).  A copy of grievance KCF 20-10-865-28e is not part of the record.[1]  Defendant Orsborne argues that these grievances were not protected conduct because they were frivolous.

The Sixth Circuit has explained that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'"  *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)).  "If the grievances are frivolous, however, this right is not protected."  *Id.*  Prisoners "cannot exercise that right in a manner that violates legitimate prison regulations or penological objectives."  *Smith*

---

[1]     The MDOC Prisoner Step III Grievance Report indicates that this grievance was received at Step I on October 20, 2020.  (ECF No. 20-3, PageID.96.)

*v. Campbell*, 250 F.3d 1032, 1037. "'Abusive or manipulative use of a grievance system [is] not ... protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)).

Beyond the general acknowledgment that grievances used to abuse or manipulate the grievance system are frivolous, limited authority exists as to what renders a grievance frivolous. As acknowledged by the Sixth Circuit in *Maben v. Thelen*, "cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*." 887 F.3d 252, 264–65 (6th Cir. 2018) (collecting cases).[2] This Court has also found grievances involving "verifiably untrue" allegations to be frivolous. *Chrzan v. Mackay*, No. 1:19-cv-116, 2020 WL 7774741, at *3 (W.D. Mich. Nov. 30, 2020) (finding that the plaintiff's grievance was frivolous where a video recording of the underlying event contradicted the allegations in the grievance), *report and recommendation adopted*, No. 1:19-cv-116, 2020 WL 7773419 (W.D. Mich. Dec. 30, 2020). Similarly, the Sixth Circuit held that a prisoner's grievance complaining about conduct that had no impact on the prisoner was frivolous. *Thaddeus-X v. Love*, No. 98-2211, 2000 WL 712354, at *2–3 (6th Cir. May 22, 2000) (finding that a grievance complaining about

---

[2]     For example, in *White–Bey v. Griggs*, the Sixth Circuit found that a prisoner's grievance that he was provided a typewriter rather than a computer was frivolous. 43 Fed. App'x 792, 794 (6th Cir. 2002).

a prison employee eating at his desk was "patently frivolous as the defendant's conduct had no adverse impact on [the plaintiff]").

In the opinion of the undersigned, Dykes-Bey's grievances were not frivolous. In grievance KCF-20-09-815-27z, Dykes-Bey stated that on September 19, 2020, he asked CO King if spray bottles could be refilled with cleaning agent to clean the toilet, sink, and shower to kill germs and viruses. (ECF No. 41-8, PageID.506). CO King denied the request because the bottles could only be filled twice per shift. (*Id.*) Dykes-Bey felt that was inadequate because 80 prisoners were using the three showers, four toilets, six sinks and three urinals that had to be cleaned. (*Id.*) The grievance was rejected as non-grievable, and Dykes-Bey was instructed to bring the issue to the Warden's Forum. (*Id.*, PageID.507.) In the opinion of the undersigned, Dykes-Bey's complaint regarding the need for more cleaning agent in the restrooms did not present a frivolous issue and was more than a *de minimis* complaint especially due to the ongoing Covid-19 pandemic.

Defendants argue that grievance KCF 20-10-865-28e was a frivolous grievance because it was rejected and because it was cited by the Warden as a reason Dykes-Bey was placed on modified access to the grievance process. Defendants argue that this grievance was considered an abusive, manipulative use of the grievance process. (ECF No. 41, PageID.359.) Although, grievance KCF 20-10-865-28e was one of the grievances that was cited by the Warden on November 24, 2020 as a reason for placing Dykes-Bey on modified access to the grievance process, that grievance was rejected as untimely. (ECF No. 20-4, PageID.159.)

7

According to Dykes-Bey's complaint, he filed this grievance because Defendant Orsborne refused to provide him with toilet paper. (ECF No. 1, PageID.5.) In the opinion of the undersigned, the refusal to provide toilet paper is not a frivolous issue.

**B. Adverse Action**

To establish the second element of a retaliation claim, a prisoner-plaintiff must show an adverse action by a prison official that would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "capable of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

**1. Threats to Transfer Dykes-Bey Out of Housing Unit**

Dykes-Bey says that CO Orsborne threatened  him after she observed him helping another prisoner with a grievance by stating: "I'll have you moved out of here." (ECF No. 1, PageID.4 (complaint), and ECF No. 51-1, PageID.637 (declaration).)

The undersigned concludes that Dykes-Bey has failed to set forth facts that constitute an adverse action. As an initial matter, it is important to note that Dykes-Bey was not transferred out of the housing unit. More importantly, the Sixth Circuit has held that a prisoner who was transferred to another prison could not

8

establish adverse action because a prisoner has no interest in being housed at a particular prison. *Colvin v. Foy*, 2015 WL 13927277, *2 (6th Cir., June 18, 2015). As stated above, "an adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus–X*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). The Sixth Circuit has stated that "[s]ince transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005) (citing *Smith v. Yarrow*, 78 F. App'x. 529, 543-44 (6th Cir. 2003)). But a limited exception applies when there are foreseeable consequences to the transfer that interfere with the prisoner's ability to access the courts. *Id.* at 702. Dykes-Bey has not shown that his ability to access the courts was affected in anyway by Defendant Orsborne's alleged threats due to Dykes-Bey's effort in helping another prisoner with his grievances.[3]

### 2. Failure to Re-hire Dykes-Bey in Unit Porter Job

Dykes-Bey lost his unit porter position on August 20, 2020, after he was convicted of a Class I misconduct for substance abuse. (*See* ECF No. 41-11, PageID.532-533 (misconduct report and hearing report finding Dykes-Bey guilty of substance abuse on Aug. 20, 2020); *Id.*, PageID.535 (letter from KCF Warden Brown to Dykes-Bey, advising him that he could lose his job as a result of this guilty

---

[3]    Dykes-Bey cites to *O'Brien v. Reed*, 2022 WL 17082629 (E.D. Cal., Nov. 18, 2022) as authority to support his retaliation claims, but this case is not binding in this District.

finding); ECF No. 41-12, PageID.539 (work history report showing that Dykes-Bey lost his unit porter job on Aug. 20, 2020).)   After he lost his work assignment, Dykes-Bey submitted the unrelated grievances identified above.[4]   Dykes-Bey says that CO Orsborne told him in October and November of 2020 that he would not get re-hired as a unit porter because he submitted grievances KCF 20-10-865-28e and KCF 20-09-815-27z.   Dykes-Bey says that after he filed these grievances, CO Orsborne and Classification Director Besteman retaliated against him by not giving him a work assignment.   Dykes-Bey says that he was not given another work assignment because of his grievances.

Defendants argue that, as a matter of law, the failure to rehire Dykes-Bey to a porter position cannot be adverse action.   Authority supports this general proposition.   Failing to give a prisoner-plaintiff a work assignment upon release from segregation and then assigning the plaintiff to work with a prisoner with whom he had a conflict with was not adverse action sufficient to support a retaliation claim.   *Colvin v. Foy*, 2015 WL 13927277 (6th Cir. June 18, 2015). Failure to assign a prisoner to a prison porter job, which implicated no constitutional rights, is not adverse action under the retaliation standard.   *Moon v. Golson*, 2016 WL 704961, *2 (E.D. Mich., Feb. 23, 2016), citing *Jewell v. Leroux*, 20 F. App'x 375 (6th Cir. 2001) (no constitutional right to prison employment) and *Siggers-El. V. Barrow*, 412 F.3d 693, 702 ( 6th Cir. 2005) (transfer that strips

---

[4]    As noted above, these were (1) **KCF-20-09-815-27z** (submitted on September 19, 2020, concerning the denial of cleaning spray) (ECF No. 41-8, PageID.506) and (2) **KCF 20-10-865-28e** (allegedly submitted in October of 2020, because Orsborne refused to provide toilet paper) (ECF No. 1, PageID.5)

prisoner of a high paying job would deter a person of ordinary firmness).  This is not a situation where Dykes-Bey was removed from his job for a retaliatory reason.  As explained above, Dykes-Bey had already lost his job because he had been found guilty of substance abuse in a Class I misconduct hearing on August 20, 2020.  In the opinion of the undersigned, Dykes-Bey has failed to support his claim that an adverse action – a decision to not rehire him as a unit porter – was taken against him due to his grievances.  To the contrary, Dykes-Bey lost that position because he was found guilty of a Class I misconduct ticket.  And Dykes-Bey has not shown that he would have been re-hired into this position if not for the actions of the Defendants.[5]

### 3. Reporting Observed Conduct to Supervisor

Dykes-Bey says that CO Orsborne accused him of engaging in a sexual act with his cellmate on November 26, 2020, by reporting what she observed to her supervisor.  Dykes-Bey was not issued a misconduct ticket and no action was taken against him.  CO Orsborne explained the situation as follows:

---

[5]     It should be noted that the parties disagree on whether Dykes-Bey sought to be reinstated to his unit porter job.  Defendants assert that Dykes-Bey never sought reclassification to a new job assignment after he was convicted of substance abuse and removed from his job.  (ECF No. 41-2, PageID.381 (affidavit of Orsborne).)  Defendants state that before Dykes-Bey could be re-hired to a porter position he needed to request reclassification to a new work assignment.  (Id.; ECF No. 41-3, PageID.386 (affidavit of Besteman).)  Dykes-Bey, however, attests that he did request a porter job from Defendant Besteman on November 27, 2020, but he received no response.  (ECF No. 51-1, PageID.637 (Dykes-Bey affidavit).)  Dykes-Bey attests that he requested reclassification to a unit porter position on August 25, 2020, and CO Orsborne reclassified him that day.  (Id., PageID.635-636.)

5.    On November 26, 2020, I was making a regular round through the
housing unit.  As I looked into the bunk area where Dykes was assigned, I saw
Dykes sitting on his bunk with another prisoner sitting in front of him at groin level
while Dykes was moving that prisoner's head back and forth.  Dykes was facing me
and the other prisoner had his back towards me.  I told both prisoners to leave the
cube and stop their actions.

6.    Based on what I observed happening between Dykes and the other
prisoner, I believed the two were engaged in a sexual act that may or may not have
been consensual.  I am required to report such activity to my supervisor, and so I
told the sergeant on duty about what I observed.  I did not write a misconduct ticket
or take any other action because I did not see enough to say for sure what was going
on.  However, I saw enough to believe there was sexual activity taking place.  I was
interviewed by my sergeant, and later I was interviewed again after Dykes filed a
PREA grievance against me. Other than being interviewed about the incident, I did
not take any further action regarding it.

(ECF No. 41-2, PageID.380 (affidavit of CO Orsborne).)   No further action was
taken,  and Dykes-Bey was not subjected to adverse conduct.[6]  In the opinion of the
undersigned, no genuine issue of fact exists to support Dykes-Bey's assertion that
CO Orsborne took adverse action against him.

## 4.  **Entering Restroom**

Dykes-Bey alleges that CO Orsborne entered the restroom unannounced on
December 25, 2020, while Plaintiff was using the urinal and then she asked him to

---

[6]    Dykes-Bey made a Prison Rape Elimination Act (PREA) complaint against
CO Orsborne because she had orally reported her observations to her own
supervisor.  The PREA complaint was closed due to insufficient evidence.  (*Id.*,
PageID.408.)

step outside for a pat-down search.[7]  Dykes-Bey claims that CO Orsborne subjected him to adverse action by failing to knock and announce before entering the restroom.  Dykes-Bey alleged in his complaint:

> 15. On Dec. 25,2020, C/O Orsbourne came into the one side restroom, I was standing at the urnal using it, Orsbourne came in unannounced, and told me to step out for a pat down, as if the "Knock and announce" law does not apply to her. Because of the nature of this incident, I asserted it in the complaint I filed with the Internal Affairs and the Ombudsman O ffice. (Exhibits-A and B).

(ECF No. 1, PageID.6.)

Dykes-Bey argues that this was an adverse act because CO Orsborne was required to knock and announce herself before she entered the restroom.   CO Orsborne indicates that she does not remember this incident.   (ECF No. 41-2, PageID.381 (affidavit of CO Orsborne).)  CO Orsborne states:

> 8.    I do not recall entering the bathroom on December 25, 2020.  I may have told Dykes I was going to shake him down.  If I did enter the bathroom, I did not knock and announce because there is no requirement for me to knock and announce myself before I enter rooms or spaces within the housing unit, except I am required to announce myself the first time I enter a housing unit and upon re-entry. I did knock and announce when I entered the housing unit that day.  If I did a pat-down search of Dykes on December 25, 2020, it was because pat-down searches are part of my routine job responsibilities, and prisoners may be searched at any time. I did not do so because of grievances.  Also, if I entered the bathroom that day, I did not do so because Dykes had filed grievances.  On December 25, 2020, I was unaware of any grievances Dykes may have filed against me.

---

[7]    This claim was also part of Dykes-Bey's PREA claim.

(*Id.*)

As noted, CO Orsborne explained that she does not knock and announce when she enters a restroom because she is not required to do so.  Female staff must announce their presence before entering and leaving the housing unit under PREA rules.  Orsborne's statement is consistent with the MDOC PREA Manual and Policy Directive.  The MDOC PREA Manual provides in part:

> For facilities housing male prisoners/offenders, female staff must announce their presence when entering a prisoner housing unit.  Knock on the most interior door and announce in a loud clear voice, "female(s) in the area," wait 10 seconds and enter.  If assigned for the entire shift, staff of the opposite gender must announce once upon entry to a unit.  However, if staff leaves the unit, upon re-entry, they must once again knock and announce their presence.

(ECF No. 41-6, PageID.480.)

MDOC Policy Directive 03.03.140, ¶ O (effective date 04/24/2017) provides:

> O.  For facilities housing male offenders, female staff must announce their presence each time they enter a prisoner housing unit.  Staff must knock on the most interior door and announce in a loud clear voice, "female(s) in the area" and wait 10 seconds before entering.

(ECF No. 41-4, PageID.392.)

These documents show that CO Orsborne was required to announce her presence before she entered the housing unit, but they do not require her to knock and announce her presence before she enters the restroom.

Nevertheless, failing to knock and announce before entering a prison restroom is not adverse action that could chill an ordinary prisoner from exercising his First Amendment rights.  Similarly, prison staff are authorized to conduct pat-down searches of prisoners at any time.  (ECF No. 41-9, PageID.512 (MDOC Policy Directive 04.04.110 (effective date 03/01/2019)).)[8]  A routine pat-down search, which

---

[8]    Both male and female corrections officer may conduct pat-down searches on

14

may be conducted at any time, would not deter a prisoner of ordinary firmness from continuing to engage in First Amendment activities such as filing grievances and lawsuits.  *Yates v. Rogers*, 2018 WL 6629366, *6 (W.D. Mich. Dec. 19, 2018).

Here, as in *Yates*, Dykes-Bey has not set forth any allegation to show that the alleged pat-down search was anything other than routine.  In the opinion of the undersigned, there exists no genuine issue of material fact on this issue because failing to knock and announce before entering a bathroom, which is not required in the prison, is not adverse action that could support a retaliation claim.

### C.  Causal Connection

CO Orsborne also argues that Dykes-Bey cannot support the causation element of his retaliation claims against Orsborne for reporting suspected sexual activity or entering the bathroom unannounced.

At the summary judgment stage, the Sixth Circuit employs a burden-shifting approach with regards to this causal requirement:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant.  If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Blatter*, 175 F.3d at 399; *see also Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007).

CO Orsborne states that she was required under PREA to report suspected sexual activities to her supervisor.  MDOC Policy Directive 03.03.140 (X) provides:

---

male inmates.  MDOC Policy Directive 04.04.110 (R).

> X.    Employees shall immediately report any knowledge, suspicion or information regarding allegations of conduct prohibited by this policy to appropriate supervisory staff.   Reports shall be taken regardless of when the incident was alleged to have occurred.   Reports may be made privately to appropriate supervisory staff, through the MDOC Sexual Abuse Hotline, by completing a Department Sexual Abuse/Sexual Harassment Complaint form on the MDOC website, by contacting the PREA Manager or by contacting the Department's Internal Affairs Division.   If the allegations pertain to conduct at another facility (including county jails, another state prison, federal prison or substance abuse program facility), the Warden shall provide email notification within 72 hours as follows:

(ECF No. 41-4, PageID.394.)  CO Orsborne did nothing more than report what she observed.  In the opinion of the undersigned, Dykes-Bey has not set forth any allegations that could support his claim that CO Orsborne made this report to her supervisor in retaliation for one of his prior grievances.  Similarly, Dykes-Bey has failed to provide evidence that CO Orsborne did not knock and announce – which she is not required to do – before she entered the bathroom based on his prior grievances.  In the opinion of the undersigned, no genuine issue of fact exists to support Plaintiff's retaliation claims against Defendant Orsborne.

### V. Equal Protection

Dykes-Bey alleges that he was treated differently because other prisoners who received misconduct tickets were able to go back to their jobs as unit porters after they served their fifteen-day suspensions.  Dykes-Bey says that he did not get rehired because he filed grievances against CO Orsborne.  Defendants argue that they are entitled to summary judgment on Dykes-Bey's Equal Protection claim.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.,*

*Inc.*, 473 U.S. 432, 439 (1985).  When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.  Where legislation singularly and negatively affects a "quasi-suspect" class such as one defined by gender, the level of scrutiny is "intermediate," and the law is valid if it is "substantially related to a sufficiently important government interest." *Id.* at 440–41.  However, a state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

Plaintiff's claim does not implicate a fundamental right.  Plaintiff does not have a "constitutional right to a particular job or any job." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *see also Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Martin v. O'Brien*, 207 F. App'x 587, 590 (6th Cir. 2006).  And Plaintiff does not allege that Defendants discriminated against him because he was a member of a suspect or quasi-suspect class.[9]  "[P]risoners are not a suspect class," *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000), "nor are classifications of prisoners." *Mader v. Sanders*, 67 F. App'x 869, 871 (6th Cir. 2003).

Moreover, Plaintiff does not allege that Defendants discriminated against

---

[9]    Dykes-Bey alleges only that he was similarly situated to prisoners Washington and Williams, who are both African American, and that he is also African American.  (ECF No. 1, PageID.9.)

him **because** he is a member of a group.[10]  The Court may read Plaintiff's claim as a

"class of one" equal protection claim "where the plaintiff alleges that she has been

intentionally treated differently from others similarly situated and that there is no

rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528

U.S. 562, 564 (2000).[11]  The Supreme Court has refused to recognize "class of one"

claims in the public employment context.  *See Engquist v. Oregon Dep't of Agric.*,

553 U.S. 591, 606–07 (2008); *see also Davis v. Prison Health Servs.*, 679 F.3d 433,

442 (6th Cir. 2012) (acknowledging that *Engquist* prohibits "class of one" claims in

the public employment context—even in that prison employment case—but

concluding that Davis raised a traditional class-based discrimination claim, not a

---

[10]     To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposely discriminated against him.  *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).  Such discriminatory purpose must be a motivating factor in the actions of the defendants.  *Id.* at 265–66.

[11]     The Sixth Circuit has described "class of one" equal protection claims as being the third type in a universe of three types of equal protection claims:

> "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty. Ohio*, 430 F.3d 783, 788 (6th Cir. 2005). Davis does not argue an infringement of a fundamental right or that he is a member of a suspect class.  Rather, Davis relies on the third argument—whether others "similarly situated" received different treatment "without any rational basis for the difference." *Id.*  This is called a "class-of-one" theory.  *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam).

*Davis v. Detroit Pub. Schs. Cmty. Dist.*, 835 F. App'x 18, 22 (6th Cir. 2020).  "[T]he hallmark of [a class-of-one] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class."  *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (internal quotes omitted).

"class of one" claim); *Carter v. Mich. Dep't of Corr.*, 2013 WL 3270909, at *13 (W.D. Mich. Jun. 27, 2013) ("Deciding whether a prisoner should be permitted to work in a particular prison job is precisely the sort of discretionary decision contemplated by the Court in *Engquist*."); *Johnson v. Grayson Cnty. Det. Ctr.*, 2021 WL 3025452, at *3 (W.D. Ky. Jul. 16, 2021) (noting that "[s]everal courts have extended the reasoning in *Engquist* to the prison context" and citing cases); *Brown v. Partin*, No., 2020 WL 5077037, at *2 (E.D. Tenn. Aug. 27, 2020) ("[A] 'class of one' theory . . . is not available in the context of prison employment.") (citing *Engquist*); *Carlton v. Lebo*, 2022 WL 167688, *8 (W.D. Mich. Jan. 19, 2022) (class of one claim not available in prison employment claim.).  In the opinion of the undersigned, Dykes-Bey's class of one equal protection claim fails in this context.

## VI. Qualified and Sovereign Immunity

In addition to arguing that they did not violate Dyke-Bey's rights under the First and Fourteenth Amendments, Defendants assert that they are entitled to qualified immunity in their individual capacities and sovereign immunity in their official capacities.

Defendants' claim for qualified immunity as to Dykes-Bey's First Amendment claim is largely redundant.  After initially arguing that they are entitled to judgment because they did not violate Plaintiff's First Amendment rights, they argue that they are entitled to qualified immunity because they did not violate Plaintiff's First Amendment rights. [12]  In any event, the undersigned agrees;

---

[12]    In other words, Defendants do not argue that the rights at issue were not

because there are no genuine issues of material fact as to the question of whether Defendants violated Dykes-Bey's First Amendment rights, the undersigned also concludes that Defendants are entitled to qualified immunity.  *See Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) ("Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).

Defendants' argument that they are entitled to qualified immunity on Dykes-Bey's Fourteenth Amendment equal protection claim is different.  Defendants argue that an equal protection class-of-one claim has not extended to the prison employment context under the reasoning of *Engquist* and the body of cases that have interpreted that holding in this context.  (ECF No. 41, PageID.372-373.)  For the reasons explained above, the undersigned respectfully agrees that the clearly established law in this Circuit is that a class-of-one equal protection claim is not actionable in the prison employment context and, therefore, that qualified immunity applies.

Defendants' claim for sovereign immunity is also different.  Defendants argue that they are entitled to sovereign immunity in their official capacities as to Dykes-Bey's claims for monetary damages regardless of the merits of Dykes-Bey's claims.

---

clearly established.

A lawsuit against a state official for monetary damages is treated as a lawsuit against the State. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Section 1983 did not expressly abrogate Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). As such, Dykes-Bey's claims against Defendants in their official capacity for monetary damages are properly dismissed in accordance with Eleventh Amendment.

## VII. Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment (ECF No. 40) because Defendants have shown that there are no genuine issues of material fact relating to Dykes-Bey's First Amendment retaliation and Fourteenth Amendment Equal Protection claims.

If the Court accepts this recommendation, this case will be dismissed.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections

constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  October 10, 2023              /s/ *Maarten Vermaat*
                                      MAARTEN VERMAAT
                                      U.S. MAGISTRATE JUDGE