UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT DYKES,

    Plaintiff,

v.

    Case No. 2:21-cv-113

    Hon. Hala Y. Jarbou

BILLIE ORSBOURNE, et al.,

    Defendants.
_____/

## **OPINION**

Plaintiff Robert Dykes-Bey, a state prisoner, brings this civil action under 42 U.S.C § 1983 against two Kinross Correctional Facility (KCF) employees: Corrections Officer Orsborne and Classification Director Bestemen.[1] Dykes-Bey alleges in his complaint that Defendants retaliated against him for exercising his First Amendment right to file prison grievances. Dykes-Bey also alleges a class-of-one violation of the Equal Protection Clause of the Fourteenth Amendment.

On October 10, 2023, Magistrate Judge Maarten Vermaat issued a Report and Recommendation (R&R) recommending that the Court grant Defendants' motion for summary judgment (ECF No. 40) and dismiss the case (ECF No. 53). Before the Court are Dykes-Bey's objections to the R&R (ECF No. 54).

### I. STANDARD

Under Rule 72 of the Federal Rules of Civil Procedure,

> the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject,

---

[1] There are a number of apparent name misspellings throughout the filings in this case. At various times, including in the initial filing of the complaint, Dykes-Bey spelled Orsborne as "Orsbourne" and Besteman as "Bestman." This Court will use the proper spellings throughout this Opinion and the accompanying Order.

> or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

Proper objections require specificity. "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Vague, conclusory objections are insufficient, as are mere restatements of a plaintiff's complaints. *See id.* Because Dykes-Bey is proceeding pro se, this Court will construe his objections more liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. BACKGROUND

Dykes-Bey alleges Defendants retaliated against him for filing grievances and for helping other prisoners do the same. Dykes-Bey alleges four specific instances of retaliation:

(1) Orsborne's threat to move Dykes-Bey out of the housing unit because he was helping other prisoners file grievances;

(2) Besteman's refusal to rehire Dykes-Bey as a unit porter (a job he initially lost because he received a misconduct ticket for substance abuse), following Orsborne's threat that Dykes-Bey would not be rehired due to his grievances;

(3) Orsborne's report to her superior that Dykes-Bey was engaging in a sexual act with his cellmate; and,

(4) Orsborne's unannounced entry into a restroom occupied by Dykes-Bey.

Further, Dykes-Bey also asserts an Equal Protection claim. He alleges that he was treated differently than other similarly situated prisoners when Besteman refused to rehire him as a unit porter. According to Dykes-Bey, prisoners who lose their institutional jobs due to misconduct

tickets are typically rehired as a matter of course. He alleges the decision to not rehire him was for an improper or irrational purpose.

## III. ANALYSIS

### A. Retaliation Claims and Objections One Through Six

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To succeed on a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

The magistrate judge concluded that Dykes-Bey was engaged in protected conduct when he filed the grievances at issue. As an initial matter and with no objections from Defendants on this point, this Court agrees with the magistrate judge's conclusion.

According to the R&R, the second element—adverse action—presents the key hurdle for Dykes-Bey. The magistrate judge concluded that none of the alleged instances of retaliation involved any adverse action on the part of the Defendants. Dykes-Bey disagrees with this conclusion in objections one through five.

The magistrate judge further concluded that Dykes-Bey could not establish the third element, retaliatory motive, for Orsborne's sexual activity report or for her unannounced entry to the restroom. Dykes-Bey objects to this conclusion in objection six.

#### 1. Objections One and Two

Dykes-Bey's first retaliation claim stems from Orsborne's alleged threat that Dykes-Bey would be transferred out of the prison housing unit. The magistrate judge concluded that this was not an adverse action "because a prisoner has no interest in being housed at a particular prison."

3

(R&R 9 (citing *Colvin v. Foy*, No. 14-1456, 2015 WL 13927277, *2 (6th Cir., June 18, 2015)).) Dykes-Bey lodges two objections: one, that the magistrate judge improperly made Defendants' arguments for them as they challenged only the protected conduct element for this claim; and two, that the magistrate judge misapplied the legal standard and ignored persuasive precedent.

First, Dykes-Bey's objection that the magistrate judge "over-stepp[ed] [his] bounds in re-characterizing the Defendants first argument" (Pl.'s Objs. 4) is unpersuasive. A court is not limited to arguments made in the parties' briefs. Rather, it must look to "the record taken as a whole." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). From there, a court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

Dykes-Bey asserts that there is no genuine dispute of material fact on this point because "[t]he record is absent of any evidence contrary to [his] sworn statement that . . . Defendant Orsborne . . . threatened to have [Dykes-Bey] moved out of the unit for exercising his first amendment rights." (Pl.'s Objs. 5.) But this misunderstands the magistrate judge's conclusion. Whether there is a genuine dispute of material fact on this claim is immaterial because even if there were, the threat to transfer a prisoner is not adverse action *as a matter of law*. Dykes-Bey maintains the burden to establish his claims. That Defendants failed to invoke the specific reason *why* Dykes-Bey failed to establish this particular claim does not relieve him of that burden.

Second, Dykes-Bey challenges the magistrate judge's legal analysis and conclusion. Dykes-Bey argues that the magistrate judge improperly required him to "show that the defendant was successful in his/her retaliation" (*i.e.*, that Dykes-Bey was actually deterred). (Pl.'s Objs. 6.)

4

He notes (correctly) that the relevant question is whether Defendants' conduct was capable of deterring a prisoner of ordinary firmness. He further asks that this Court adopt the reasoning of an out of district case, *O'Brien v. Reed*, No. 122CV00780AWIBAMPC, 2022 WL 17082629 (E.D. Cal. Nov. 18, 2022), for the proposition that the threat of transfer can constitute adverse action.

Contrary to Dykes-Bey's objections, the magistrate judge used the proper legal standard and did not require actual deterrence. The R&R makes this point explicitly, citing the same case Dykes-Bey does: "[t]he relevant question is whether the defendants' conduct is 'capable of deterring a person of ordinary firmness;' the plaintiff need not show actual deterrence." (R&R 8 (quoting *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002)).) Instead, the magistrate judge relied on Sixth Circuit precedent reflecting that "ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005).

In *Siggers-El*, the Sixth Circuit concluded that a transfer *could* amount to adverse action in special circumstances, like when such a transfer would "inhibit[] [a plaintiff's] ability to access the courts." To differentiate Dykes-Bey's case from *Sigger-El*, the magistrate judge noted "Dykes-Bey has not shown that his ability to access the court was affected in any way by Defendant Orsborne's alleged threats[.]" (R&R 9.) Dykes-Bey misunderstands the magistrate judge's analysis when he says that this was tantamount to requiring a showing of actual deterrence. To the contrary, the magistrate judge was analyzing whether the threatened transfer Dykes-Bey alleged could fit into a narrow exception to the general rule that transfers do not ordinarily constitute adverse action, a question separate from deterrence.

Finally, the magistrate judge was correct to acknowledge, but not follow, *O'Brien*. Again, the Sixth Circuit does not ordinarily consider transfers to be adverse action because "prisoners are

5

expected to endure more than the average citizen" and "transfers are common among prisons." *Siggers-El*, 415 F.3d at 701. The dicta in *O'Brien* that "[i]ndividuals in society do not like to move" and thus "[t]he threat of moving alone would chill a person of ordinary firmness from continuing to file grievances" is directly contrary to Sixth Circuit reasoning and as such is inappropriate to guide this Court's analysis. *See O'Brien*, 2022 WL 17082629, at *5.

This Court finds that the magistrate judge correctly analyzed the issues with respect to Dykes-Bey's first retaliation claim and will overrule the first and second objections.

### 2. Objection Three

Dykes-Bey's second retaliation claim centers on his inability to be rehired as a unit porter. The magistrate judge reasoned from a number of Sixth Circuit cases standing for the proposition that prisoners have no constitutional right to a particular prison job. (R&R 10-11 (citing *Colvin*, 2015 WL 13927277, at *2; *Moon v. Golson*, No. 2:15-CV-12131, 2016 WL 704961, at *2 (E.D. Mich. Feb. 23, 2016); *Siggers-El*, 412 F.3d at 702).) He concluded that no adverse action had occurred because "Dykes-Bey lost [his] position because he was found guilty of a Class I misconduct ticket. And Dykes-Bey has not shown that he would have been re-hired into this position if not for the actions of the defendants." (*Id.* at 11.) Dykes-Bey objects, arguing that a material dispute exists as to this retaliation claim. The Court agrees with Dykes-Bey.

As Dykes-Bey points out, two issues of material fact exist. First, as the magistrate judge acknowledged and then set aside, there is a question of fact as to whether Dykes-Bey requested to be rehired. (*Compare* Pl.'s Decl. ¶¶ 21, 22, ECF No. 51-1 *and* Porter Kite, ECF No. 51-2 *and* Food Service Kite, ECF No. 51-3 *with* Besteman Decl. ¶ 9, ECF No. 41-3.) Second, there is a question of fact as to whether the decision to not rehire Dykes-Bey was based on a retaliatory motive or something more innocuous. (*Compare* Pl.'s Decl. ¶ 21 ("Orsborne told me twice that I'll never work as a unit porter . . . because of the grievances I filed against her.") *with* Besteman

6

Decl. ¶ 9 ("[t]he only reason Dykes was not assigned . . . was because I never received a request from Dykes to be given another job assignment.").) These factual disputes, of course, are for the jury to resolve.

The magistrate judge appeared to conclude both that Dykes-Bey's claim failed as a matter of law (R&R 10 (noting authoritative support for the notion that "the failure to rehire . . . cannot be adverse action")) and that he failed to adduce sufficient evidence to sustain a genuine dispute of material fact (R&R 11). This Court disagrees with both conclusions. First, it is immaterial that there is no constitutional right to prison employment. The proper analysis is whether Defendants' actions would deter a prisoner of ordinary firmness from exercising his constitutional right. *Thaddeus-X*, 175 F.3d at 394. Here, where prison employment is Dykes-Bey's "only source of income" (Pl.'s Decl. ¶ 23), it would be reasonable to conclude that a prisoner of ordinary firmness would be deterred from exercising his First Amendment rights if doing so would threaten his only source of income, which he uses to pay for various hygiene products and over the counter medications. (*Id.*) With the proper standard in mind, the Court is unable to conclude that, as a matter of law, the refusal to rehire someone cannot constitute adverse action. *See Siggers-El*, 412 F.3d at 703 (holding that the retaliatory loss of a prison job needed to fund attorney fees could constitute adverse action).

The question remains whether Dykes-Bey has put forth sufficient evidence to raise a genuine dispute of material fact. This Court concludes he has. Although the magistrate judge stated that he "has not shown that he would have been re-hired into this position if not for the actions of the Defendants" (R&R 11), the record suggests the opposite. There are competing affidavits as to why Dykes-Bey was not rehired—Dykes-Bey claims retaliation, Besteman claims Dykes-Bey never requested his job back. Further, Dykes-Bey has submitted evidence of two kites

7

that appear to contradict Besteman's claims. This is sufficient to create a genuine factual dispute for the jury to resolve.

The Court notes that this case is distinguishable from *Colvin*, cited by the magistrate judge. In *Colvin*, the prisoner claimed retaliation when a prison officer "fail[ed to give him a work assignment when he was released from administrative segregation" and when the officer "later assign[ed] him to work with an inmate . . . with whom [the prisoner] had had a prior altercation." *Colvin*, 2015 WL 13927277, at *2. First, the plaintiff in *Colvin* eventually received a work assignment, albeit one he perhaps did not prefer. In other words, the issue was one of delay, not complete refusal to re-assign. Here, Dykes-Bey appears to have submitted two separate requests for two separate job assignments, both of which went unanswered. Second, in *Colvin*, the court found that the defendant "showed that he had a non-retaliatory reason for delaying [the] job placement and that he was not aware of [the] prior altercation." *Id.* Here, Besteman's asserted non-retaliatory reason remains in dispute. *Colvin* thus does not control.

The Court will grant Dykes-Bey's objection to this claim and will not adopt the R&R's reasoning.

### 3. Objection Four

Dykes-Bey's third retaliation claim stems from Orsborne's report to her supervisor that she observed Dykes-Bey potentially "engaged in a sexual act" with another prisoner "that may or may not have been consensual." (Orsborne Decl. ¶ 6, ECF No. 41-2.) The magistrate judge noted that no further action was taken from this report and concluded that Dykes-Bey "was not subjected to adverse conduct." (R&R 12.) Dykes-Bey objects, arguing that the magistrate judge improperly "conclude[d] that the report Defendant Orsborne gave to her supervisor was a factual report, and if the report was factual, then it does not constitute[] sexual harassment-adverse action, because she was only performing her job duties." (Pl.'s Objs. 9.)

8

Dykes-Bey fails to convince this Court that a single report, even a false report, made to a prison officer's superior can constitute adverse action, standing alone. Prison employees "shall immediately report any knowledge, suspicion or information regarding allegations" of sexual misconduct. (Policy 03.03.140 ¶ X, ECF No. 41-4.) From there, "[i]nvestigations of sexual abuse/sexual harassment shall be completed by staff who have received specialized investigator training as outlined in the PREA [(Prison Rape Elimination Act)] manual." (*Id.* ¶ RR.) In other words, reporting suspected sexual activity is a routine part of an officer's job that, once done, triggers further review by specialist employees. It is difficult to see why an officer, seeking to retaliate against a prisoner for exercising his First Amendment rights, would choose this particular path.

Orsborne reported her suspicions to her superior. This resulted in no further action aside from Dykes-Bey being questioned about it. No misconduct ticket was issued. Simply put, a single instance of a prison officer reporting suspected sexual misconduct to her superior would not be sufficient to deter a prisoner of ordinary firmness from exercising his constitutional rights. If frivolous reports were repeatedly lodged against Dykes-Bey, or if a misconduct ticket were to actually issue, or if there was some reason to believe that the PREA investigation process was insufficient to weed out meritless reports, perhaps the filing of a false report *could* rise to the level of adverse action. But these are not the facts of this case.

The Court finds that the magistrate judge correctly analyzed the issues with respect to Dykes-Bey's third retaliation claim and will overrule the fourth objection.

### 4. Objection Five

Dykes-Bey's fourth and final retaliation claim stems from Orsborne's alleged failure to knock before entering the restroom occupied by Dykes-Bey so that she could order him to submit to a pat-down. The magistrate judge found that "failing to knock and announce before entering a

9

prison restroom is not adverse action that could chill an ordinary prisoner from exercising his First Amendment rights." (R&R 14.) Dykes-Bey objects, arguing "the magistrate judge is glossing over the facts before him, and reducing [Orsborne's] actions to her performing her job duties." (Pl.'s Objs. 10.)

Dykes-Bey's arguments boil down to Orsborne's failure to follow prison policies which would require a female officer to both announce her presence before and "have a penological reason for entering the restroom." (*Id.*) Dykes-Bey argues that Orsborne's failures amount to sexual harassment. Upon review, the prison policies he cites do not go as far as he claims.

For instance, there is no requirement that a female prison officer must knock and announce before entering a communal restroom within a housing unit. Upon entry or reentry into the housing unit itself, MDOC policies would require Orsborne to "knock . . . and wait 10 seconds before entering." (Policy Directive 03.03.140 ¶ O.) But no policy requires such an announcement before entering rooms within the housing unit.

Further, Policy Directive 03.03.140 does indeed list "voyeurism" as actionable sexual misconduct by a prison employee. (Policy Directive 03.03.140 ¶ H(9).) While the relevant policy version did not define voyeurism, Dykes-Bey cites the current version which includes in its definition "peering at a prisoner who is using a toilet in their cell." MDOC Policy Directive 03.03.140 ¶ N (effective date Apr. 5, 2021). But even if the current policy's definition were to govern this case (it does not), Dykes-Bey's reliance is misplaced. For one, Dykes-Bey conspicuously omits "in their cell" from his argument, an important omission given this alleged misconduct took place in a communal restroom, not in his cell. While voyeurism is no more appropriate in a communal restroom than in a cell, this is one example of MDOC policies suggesting that prisoners have a higher expectation of privacy in their cell than in communal areas.

Additionally, and more fatally, Dykes-Bey does not allege that Orsborne "peered" at him while he was using the toilet; she entered to order him to leave the restroom and submit to a pat down.

Dykes-Bey also cites Policy Directive 04.04.110 specifying "[a] strip search shall be performed only be employees of the same sex as the prisoner being searched." MDOC Policy Directive 04.04.110 ¶ Z (effective date Feb. 1, 2021). Once again, his reliance is misplaced. First, the policy in place at the time contained no such same-sex requirement. (Policy Directive 04.04.110 ¶ Z, ECF No. 41-9.) Second, no "strip search" appeared to have occurred or to have been demanded. This concerned a *pat down*, which "[d]epartment employees have the authority to conduct . . . at any time" and which, "for male prisoners, . . . need not be conducted by a staff member of the same sex[.]" (Policy Directive 04.04.110 ¶ R; *accord* MDOC Policy Directive 04.04.110 ¶ T (effective date Feb. 1, 2021).)

In this instance, Dykes-Bey did not suffer the sort of adverse action from Orsborne that would deter a prisoner of ordinary firmness from exercising his rights. Orsborne entered a restroom to demand Dykes-Bey submit to a pat down. She was not required to knock and announce before entering the restroom, nor did she appear to enter for an inappropriate reason. She entered to demand a pat down, which was within her authority to demand. Again, Orsborne could conduct a pat down of a male prisoner "at any time" and indeed was required to conduct a pat down "of at least five randomly selected prisoners per shift[.]" (Policy Directive 04.04.110 ¶¶ R, T.) Certainly, behavior of this sort by Orsborne could theoretically constitute adverse action if it occurred with sufficient frequency to suggest intentional and inappropriate targeting. But a single instance of Orsborne operating within the parameters of MDOC policy simply does not rise to the level of adverse action.

The Court finds that the magistrate judge correctly analyzed the issues with respect to Dykes-Bey's fourth retaliation claim and will overrule the fifth objection.

### 5. Objection Six

Dykes-Bey's final retaliation objection relates to the magistrate judge's conclusion that "Dykes-Bey cannot support the causation element of his retaliation claims against Orsborne for reporting suspected sexual activity or entering the bathroom unannounced." (R&R 15.) The magistrate judge correctly noted the Sixth Circuit's burden-shifting framework governing the causation element, but Dykes-Bey argues that the magistrate judge failed to properly consider circumstantial evidence.

As an initial matter, Dykes-Bey has not established that adverse action occurred with respect to these two claims. Thus, even if this Court were to find a causal connection, neither of these claims would survive.

Even assuming for the sake of argument that these two incidents did amount to adverse action, the magistrate judge is correct that Dykes-Bey does not set forth any specific allegations that could support the requisite causal connection. Unlike for the housing and porter job claims, Dykes-Bey does not allege any facts suggesting a retaliatory motive for the sexual activity reporting and restroom claims. Instead, Dykes-Bey offers conclusory allegations that these alleged adverse actions were part of an ongoing retaliation "campaign." A conclusory allegation is not circumstantial evidence.

Finally, Orsborne is able to point to a separate, independent reason she took these alleged actions. Both claims involve actions that were sanctioned by, and indeed arguably required by, prison policy. Orsborne is required to report suspicions of sexual activity occurring between prisoners, is authorized to pat down a prisoner at any time, and is required to pat down five random prisoners per shift.

12

In short, the magistrate judge's conclusion was correct for several independent reasons. First, with no adverse action, there is no causal connection to establish. Second, Dykes-Bey has failed to offer evidence, either circumstantial or direct, that suggests a retaliatory motive for the sexual harassment report and restroom claims. Third, Orsborne can point to independent reasons why she took these actions.

The Court finds that the magistrate judge correctly analyzed the issues with respect to the causal connection aspect of Dykes-Bey's third and fourth retaliation claims and will overrule the sixth objection.

### B. Equal Protection Claim and Objection Seven

Dykes-Bey asserts an equal protection violation for Defendants' refusal to rehire him as a unit porter. According to Dykes-Bey, unit porters initially removed from their post for receiving a misconduct ticket would be rehired as a matter of course; Defendants' refusal to do so in Dykes-Bey's case amounted to a class-of-one equal protection violation. The magistrate judge concluded this claim was barred by Supreme Court precedent, and Dykes-Bey objects.

The magistrate judge is correct—Supreme Court precedent straightforwardly and conclusively bars this claim. In *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), the Supreme Court held that "recognition of a class-of-one theory of equal protection in the public employment context—that is, a claim that the State treated an employee different from others for a bad reason, or for no reason at all—is simply contrary to the concept of at-will employment." *Id.* at 606. Dykes-Bey argues that he was treated differently for an improper and irrational reason when he was not given his job back. That may very well be the case, but Dykes-Bey must find his remedy outside of the Equal Protection Clause. As the Supreme Court noted, "[p]ublic employees typically have a variety of protections from just the sort of personnel actions about which [the plaintiff] complains, but the Equal Protection Clause is not one of them." *Id.* at

13

609; *see also Carter v. Mich. Dep't of Corr.*, No. 1:13-CV-37, 2013 WL 3270909, at *13 (W.D. Mich. June 27, 2013) ("Whether a prisoner should be permitted to work in a particular prison job is precisely the sort of discretionary decision contemplated by the court in *Engquist*."); *Carlton v. Lebo*, No. 1:21-CV-981, 2022 WL 167688, at *8 (W.D. Mich. Jan. 19, 2022) (collecting cases and holding that a class of one equal protection claim necessarily fails in the prison employment context).

The Court finds that the magistrate judge correctly analyzed the issues with respect to Dykes-Bey's equal protection claims and will overrule the seventh objection.

### C. Qualified and Sovereign Immunity and Objection Eight

The magistrate judge concluded that Defendants are protected by qualified immunity on the retaliation claims because "there are no genuine issue of material facts as to the question of whether Defendants violated Dykes-Bey's First Amendment rights[,]" and that Defendants are protected by qualified immunity on the equal protection claim because "a class-of-one equal protection claims is not actionable[.]" (R&R 20.)  Further, the magistrate judge concluded sovereign immunity applies to the extent Dykes-Bey seeks monetary damages in Defendants' official capacities.  Dykes-Bey objects to the qualified immunity portions, arguing a material dispute does exist with respect to the retaliation claims and that he asserts a viable equal protection claim.

With respect to sovereign immunity and equal protection qualified immunity, this Court agrees with the magistrate judge's conclusions and analysis.  Retaliation qualified immunity is different.  Specifically, qualified immunity must be re-analyzed because this Court finds that a dispute does exist regarding Defendants' allegedly retaliatory refusal to rehire Dykes-Bey to his porter job.

"Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008). As an initial matter, the protected status of filing grievances is well established. *See, e.g.*, *Scott v. Stone*, 254 F. App'x 469 (6th Cir. 2007). While the Sixth Circuit's analysis "[i]n the context of First Amendment retaliation . . . historically focused on whether a defendant intended to retaliate against a plaintiff for clearly established First Amendment-protected activity," the Supreme Court has since clarified that it "requires courts to evaluate both the clarity of the right that was violated and the clear unconstitutionality of the retaliatory conduct itself[.]" *MacIntosh v. Clous*, 69 F.4th 309, 320 n.3 (citing *Reichle v. Howards*, 566 U.S. 658, 664-70 (2012)). The focus is thus on whether it was clearly established that Defendants' threat and decision to not rehire Dykes-Bey in retaliation for filing grievances could constitute adverse action.

Here, this Court again finds the Sixth Circuit's *Siggers-El* instructive, a case in which the Sixth Circuit found qualified immunity did not apply. To reiterate, *Siggers-El* established that, in certain contexts, the retaliatory loss of a prison job could amount to adverse action. *Siggers-El*, 412 F.3d at 703. Like in *Siggers-El*, this was Dykes-Bey's only source of income; he needed this job to pay for certain hygiene products and medicine. If Defendants did refuse to rehire him as a direct result of his protected activity, as Dykes-Bey alleges, then it follows that Defendants "knew or should have known of the constitutionally violative effect of [their] actions." *Id.* at 704. Again, Defendants' actions are distinguishable from other cases in which the prisoner merely failed to obtain the job of their choice. Here, Dykes-Bey alleges that he should have received his old job

15

back, or, at least, *another* job, and that the only reason he did not was because he exercised his constitutional rights.

Critically, "[g]overnment officials 'can still be on notice that their conduct violates established law even in novel factual circumstances.'" *MacIntosh*, 69 F.4th at 319 (quoting *Hope v. Pelzer*, 5.6 U.S. 730, 739-41 (2002)). As the Sixth Circuit has recently stressed, "prior cases need not be 'fundamentally similar' to the facts at hand . . . [i]nstead the 'salient question' is whether the 'state of the law' gives defendants 'fair warning' that their actions are unconstitutional." *Id.* As *Siggers-El* precedes Defendants' alleged actions, Defendants had "fair warning" that a prison job may be protected from retaliatory actions, especially when, as here, that job is a prisoner's only source of income and necessary for the purchase of important products and services. Qualified immunity does not protect Defendants at this stage.

The Court finds that while the magistrate judge correctly analyzed qualified immunity and sovereign immunity on certain claims, he erred in his analysis of qualified immunity as it pertains to Dykes-Bey's alleged retaliatory loss of his porter job.

## IV. CONCLUSION

In summary, on de novo review, this Court agrees with the magistrate judge on all aspects of this case save one—Dykes-Bey's retaliation claim related to his former unit porter job. The Court finds that a material dispute of fact exists as to this claim and that qualified immunity does

not prevent its resolution. As such, the Court will reject the recommendation as to both Defendants, and the case will continue as to that sole claim.

The Court will enter an order in accordance with this Opinion.


Dated: November 27, 2023              /s/ Hala Y. Jarbou
                                      HALA Y. JARBOU
                                      CHIEF UNITED STATES DISTRICT JUDGE